UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAROL H.,[1]

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

19-CV-1247-LJV
DECISION & ORDER

---

On September 16, 2019, the plaintiff, Carol H. ("Carol"), brought this action under the Social Security Act ("the Act").  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.  Docket Item 1.  On June 22, 2020, Carol moved for judgment on the pleadings, Docket Item 14; on August 19, 2020, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on September 9, 2020, Carol replied, Docket Item 16.

For the reasons stated below, this Court grants Carol's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Carol argues that the ALJ erred when she found that Carol was not disabled. Docket Item 14-1. Specifically, Carol argues that the ALJ erred by substituting her own lay judgment for that of a medical professional in determining Carol's residual functional

2

capacity ("RFC").³  *Id.* at 8-17.  This Court agrees that the ALJ erred and, because that error was to Carol's prejudice, remands the matter to the Commissioner.

I.     **PHYSICAL RFC**

When determining a plaintiff's RFC, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  Although an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision," *id.* at 56, an ALJ "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words,

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute [her] own judgment for competent medical opinion . . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted).  Because an ALJ is not a medical professional, an RFC determination without a medical advisor's assessment is not supported by substantial evidence.  *Cheek v. Comm'r of Soc. Sec.*, 2020 WL 2028258, at *3 (W.D.N.Y. Apr. 28, 2020) (quoting *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016)).

---

³ A claimant's RFC "is the most [she] can still do despite [her] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

Furthermore, when an ALJ does "not connect the record evidence and RFC findings" or otherwise "explain how the record evidence supported [her] RFC findings," the decision leaves the court "with many unanswered questions and does not afford an adequate basis for meaningful judicial review." *Gorny v. Comm'r of Soc, Sec.*, 2018 WL 5489573, at *4 (W.D.N.Y. Oct. 29, 2018). "Where the record primarily discusses a plaintiff's impairments, symptoms, and treatment, but does not shed light on the plaintiff's physical limitations, the ALJ may not rely on the record in determining the plaintiff's RFC." *Cheek*, 2020 WL 2028258, at *4 (citing *Trippett v. Comm'r*, 2018 WL 4268917, at *4 (W.D.N.Y. Sept. 7, 2018)). And a very specific RFC assessment—such as the specific amount of time a claimant can spend on certain activities—must be based on evidence in the record, not on "the ALJ's own surmise." *Cosnyka v. Colvin*, 576 Fed.App'x. 43, 46 (2d Cir. 2014) (summary order).

Here, the ALJ recognized that Carol had significant limitations in sitting, standing, walking, and working with her hands. *See* Docket Item 9 at 31 (finding that Carol's "lumbar degenerative disc disease; osteoarthritis; [and] bilateral carpal tunnel syndrome . . ." were "severe impairments"). To accommodate those limitations, the ALJ fashioned a highly-specific RFC, finding that Carol could

> perform light work[4] . . . except [she] can walk for four hours, and sit or stand for six hours[,] per eight-hour workday; can alternate between sitting and standing once every 30 minutes for 5 minutes without increasing time off task; can occasionally push and pull; can occasionally climb ramps and stairs; can occasionally balance on level surfaces; occasionally stoop (i.e.[,] bending at the waist) but never kneel, crouch (i.e.[,] bending at the knees)

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b); 416.967(b).

>and crawl; can frequently but not constantly perform bilateral handling (including gross manipulation), fingering (including fine manipulation) and feeling; no repetitive or prolonged forceful gripping or grasping activities for both hands; can never tolerate exposure to unprotected heights and moving machinery or moving mechanical parts; should avoid exposure to extreme heat, to wetness and to humidity . . . .

*Id.* at 33. But there were no medical opinions behind those specific limitations, and the ALJ apparently devised them from whole cloth. That error requires remand.

The ALJ's decision summarizes Carol's physical issues and cites medical evidence in the record addressing them. *Id.* at 34-35 (noting that Carol "has a history of back and joint pain, as well as carpal tunnel syndrome . . . but [her] level of treatment is not consistent with her allegations or with a finding of total disability"). For example, the ALJ refers to imaging results from Mercy Hospital of Buffalo after an MRI and x-ray of Carol's spine, office treatment records from OLV Family Care documenting Carol's repeated complaints of back pain, and a progress summary of the physical therapy records from Catholic Health Partners. *Id.* at 34. None of those records, however, assess Carol's work-related functional limitations, let alone support the ALJ's specific RFC limitations. *See, e.g., id.* at 719-722 (uninterpreted imaging results), 724 (noting that Carol's back pain was not bad during the visit but that the pain increases when she "does more"), 731 (summary of MRI results), 733 (summary of results from x-ray of the lumbar spine), 796-98 (noting that Carol was being treated for lumbar degenerative disc disease and that her pain was "6/10 in [her] lower back," and referring her to physical therapy), 849 (physical therapy notes), 921-23 (noting that Carol "ha[d] trouble walking long distances due to lumbar disc disease").

The physical therapy notes, for example, state that Carol had "[i]mproving limitation in community activities, limitation in functional capacity and performance, [and]

5

limitations in home management and performance in leisure activities," but they do not offer anything more specific about the "improving . . . limitations." *Id.* at 849. Similarly, the physical therapist noted that Carol could "stand/walk *longer* with less pain," *id.* (emphasis added), but he did not say what "longer" means. *Cf. Cosnyka*, 576 F. App'x at 46 (orthopedic examiner's opinion, that the plaintiff required "regular comfort breaks" but that did not indicate the length of those required breaks, did not support RFC that the plaintiff could be off-task six minutes per hour). So the physical therapy notes do not support the ALJ's conclusion that Carol could stand for six hours or walk for four hours. *See* Docket Item 9 at 33.

What is more, the ALJ discounted the medical opinions that addressed Carol's physical capabilities. *See* Docket Item 9 at 36. She gave only "partial weight" to the opinion of David Brauer, M.D., because it was consistent with the diagnosed impairments in the record but was the result of a one-time examination and "appear[ed] to be an overstatement of [Carol]'s abilities." *Id.* at 36. And she gave even less weight—"little weight"—to the State agency review opinions as well as to the opinion of Danielle M. Leach-Minazzi, FNP ("FNP Leach-Minazzi").[5] *Id.* In other words, the ALJ did not base the physical RFC on any medical opinions in the record. *See id.* (rejecting Dr. Brauer's conclusion that Carol did not have any limitations "to sit, stand, climb, push, pull, or carry heavy objects," and giving "little weight" to FNP Leach-Minazzi's opinion

---

[5] The ALJ noted that nurse practitioners are "not an acceptable medical source," that FNP Leach-Minazzi's "clinical findings and physical limitations attributed to [Carol] were contradictory," and that FNP Leach-Minazzi failed to explain the carpal tunnel diagnosis after a negative EMG test. Docket Item 9 at 36. But the ALJ nevertheless considered FNP Leach-Minazzi's findings about the "severity and effect of [Carol]'s functioning." *Id.*

because "[h]er clinical findings and physical limitations . . . were contradictory"). And even if she had, those opinions did not include any support for the very specific RFC limitations.

Nor did the ALJ base her specific limitations on Carol's own testimony about what she could or could not do. During the hearing, Carol described her back pain as "sudden [and] stabbing." *Id.* at 53. She testified that because walking and standing exacerbate the pain, she can "usually walk about 15 or 20 minutes at a time" before the pain becomes "unbearable." *Id.* She said that she can stand for less than twenty minutes at a time but that she can sit for a few hours before needing to move. *Id.* at 53-54. With respect to her upper extremities, Carol testified that she had carpal tunnel syndrome in both hands but that it was sometimes worse in one hand or the other depending on the day. *Id.* at 55. She said that the pain improves when she does not use her hands but that she feels the pain "periodically" as she does things. *Id.* at 56. None of that provides any support for the RFC's specific limitations.

In fact, the ALJ never explained or provided any reason why she decided that Carol could walk for four hours—as opposed to three hours or five hours or some other arbitrary period of time. *Cf.* Docket Item 9 at 33-36 (not explaining how she reached the highly-specific limitations in the RFC or citing the record for anything other than general support). The same is true for several other very specific limitations: that Carol could sit and stand for six hours; that she needed to alternate between sitting and standing every 30 minutes; and that the alternating could take five minutes to accomplish. *Id.* And while less specific, several other medically-unsupported limitations—including occasionally pushing and pulling; occasionally climbing ramps and stairs; occasionally

balancing on level surfaces; occasionally stooping; and frequently but not constantly handling (including gross manipulation), fingering (including fine manipulation) and feeling—also seem to come from whole cloth.  *Id.*  If, as the ALJ apparently believed, Carol's physical impairments required limitations on walking, sitting, standing, and manipulating with her hands, among other things, then the ALJ "should have obtained medical opinion evidence supporting such [limitations]."  *See, e.g.*, *Cheek*, 2020 WL 2028258, at *5 (remanding because the ALJ's highly-specific RFC was not supported by substantial evidence when the record did not contain opinion or medical evidence as to the plaintiff's ability to sit/stand for a particular length of time).

The Commissioner argues that remand is not warranted because "[t]he ALJ's inclusion of detailed, specific limitations in the RFC represented a more restrictive, and therefore more favorable, RFC than assessed by many of [Carol]'s own treatment providers."  Docket Item 15-1 at 13.  But none of Carol's providers provided specific, less-restrictive limitations.  So there is no way of knowing whether the Commissioner is correct in suggesting that Carol's "own treatment providers" would find that she could actually sit, stand, and walk longer—or manipulate more frequently—than the ALJ found.  *See Heckman v. Comm'r of Soc. Sec.*, WL 1492868, at *3-4 (W.D.N.Y. Apr. 4, 2019) (holding that the ALJ's highly-specific RFC was not supported by substantial evidence because an opinion that the claimant "was moderately limited in standing, walking, and sitting only for 'a long time'" could not provide support for the specific amount of time that a claimant could sit or stand without relief).

Along the same lines, the Commissioner argues that an RFC need not perfectly correspond with a particular medical opinion and that the ALJ was required to reach a

determination based on the record as a whole.  See id. at 7-8.  As general propositions, those statements are correct.   But that does not change the rule, already explained and analyzed in detail, that the ALJ cannot rely on her lay reading of the record to craft highly specific limitations.  See McBrayer v. Sec'y of Health & Hum. Servs., 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

In sum, without "some explanation" from the ALJ "as to the tether between her RFC and the non-stale medical opinions or statements from plaintiff, the RFC [is] based upon her lay analysis of plaintiff's limitations, which is not permitted and requires remand."  Jordan v. Berryhill, 2018 WL 5993366, at *3 (W.D.N.Y. Nov. 15, 2018); see also, e.g., Mariani v. Colvin, 576 Fed. Appx. 8, 10 (2d Cir. 2014) (summary order) (holding that the RFC was not supported by substantial evidence "because the record provide[d] no evidence for the ALJ's specific finding that Mariani could use his dominant right hand for fifty percent of the workday"); Tomicki v. Berryhill, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018) ("[T]he record does not support the ALJ's conclusion that she needs to briefly switch between sitting and standing only every thirty minutes.  . . . Moreover, there is evidence in the record indicating that Tomicki needs to change positions every few minutes, not every thirty minutes."); cf. Silkowski v. Comm'r, WL 1493951, at *6 (W.D.N.Y. Mar. 27, 2020) (where a doctor opined that the plaintiff required "frequent opportunities to alternate between sitting, standing and walking," the ALJ erred in determining that the plaintiff could change position every 60 minutes for up to five minutes without leaving the workstation because the ALJ "provided no . . . tether between 'frequent' and 'every 60 minutes for up to 5 minutes'").  Accordingly, the case

is remanded so that the ALJ can recontact Carol's medical providers or otherwise develop the record to support any specific limitations in her RFC.

## II.     MENTAL RFC

When determining a plaintiff's RFC, an ALJ must evaluate every medical opinion received, "[r]egardless of its source." 20 C.F.R. § 404.1527(c). And before an ALJ may deny a claimant's application, she must "confront the evidence in [the claimant's] favor and explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016).

Not all medical opinions are entitled to the same weight, however. For example, social workers are not "'acceptable medical sources' . . . whose medical opinions may be entitled to controlling weight." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)). They instead are deemed "other sources,"[6] whose opinions the ALJ is "free to discount . . . in favor of the objective findings of other medical doctors." *Id.* at 108-09. Nevertheless, if the opinions of "other sources"—including those of social workers— "may have an effect on the outcome of the case," 20 C.F.R. § 404.1527(f)(2), the ALJ still must consider and explain the weight assigned to those opinions in a way that

---

[6] When Carol filed her claim in April 2016, social workers were "other source[s]," *see* 20 C.F.R. § 416.913(d)(1) (2015), whose opinions could not "establish the existence of a medically determinable impairment"; "depending on the particular facts in a case," however, "and after applying the factors for weighing opinion evidence, [such opinions could] outweigh the opinion of an 'acceptable medical source[ ]' . . .," *see* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims, 71 Fed. Reg. 45,593, 45,596 (Aug. 9, 2006).

"allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning," SSR 06-03P, 2006 WL 2329939, at *6 (Aug. 9, 2006).  The Code of Federal Regulations ("the Code"), 20 C.F.R. § 404.1527(c), enumerates six factors that an ALJ should consider in giving weight to the opinion of an "other source":

> [1] the length and frequency of the treating relationship; [2] the nature and extent of the relationship; [3] the amount of evidence the source presents to support his or her opinion; [4] the consistency of the opinion with the record; [5] the source's area of specialization; [6] and any other factors the claimant brings to the ALJ.

See Tolliver v. Astrue, No. 12-CV-042S, 2013 WL 100087, at *3 (W.D.N.Y. Jan. 7, 2013) (citations omitted) (summarizing the factors from the Code).

In formulating Carol's mental RFC, the ALJ found that she

> is able to understand, carry out, and remember simple, routine tasks defined as work that requires doing the same task everyday with little variation in location, hours or tasks; can work in a low stress environment (meaning one with no supervisory responsibilities; no independent decision-making required except with respect to simple, routine, decisions; and with few, if any, workplace changes in work routines, processes or settings); can perform work that would not require a high level of attention to detail.

Docket Item 9 at 33.  In reaching this determination, the ALJ gave "partial weight" to the opinion of a social worker, Kim Diebold, LMSW:  she gave LMSW Diebold's opinion "some weight to the extent it [was] consistent with the record" and "limited weight" to the extent that LMSW Diebold's "clinical findings and mental limitation conclusions were contradictory to her residual functional capacity findings."  Id. at 36.

But the ALJ did not identify which specific findings and conclusions contradicted what residual functional capacity findings.  Indeed, she provided no explanation whatsoever other than to note that LMSW Diebold "concluded that [Carol] had mild limitations in understanding, remembering and applying information, concentrating,

11

persisting and maintaining pace, and adapting or managing oneself, and no limitation in the ability to interact with others, but other limitations she identified are contradictory." *Id.* And even that explanation did not say what "other limitations she identified" that the ALJ found to be "contradictory."

Moreover, even the mild limitations to which the ALJ referred do not necessarily contradict the most significant finding in LMSW Diebold's opinion: that Carol would be absent from work twice a month, *id.* at 959. The ALJ did not provide any reason for rejecting that part of LMSW Diebold's opinion. Nor did the ALJ identify any medical evidence that might justify rejecting LMSW Diebold's opinion about how many days each month Carol would miss work. *Cf. Genier*, 298 F. App'x at 108-09 (explaining that the ALJ may "discount" other source opinions "in favor of the objective findings of other medical doctors").

Indeed, the only other opinion regarding Carol's mental health to which the ALJ afforded any significant weight[7] was that of the consultative examiner Susan Santarpia, Ph.D.[8] *See* Docket Item 9 at 604-07. But the ALJ afforded Dr. Santarpia's opinion only "partial weight" because the "[t]reatment records support[ed] additional limitations." *Id.*

---

[7] The ALJ gave "little weight" to the State agency review opinions and "no weight . . . to [FNP Leach-Minazzi's] conclusions with regard to [Carol]'s mental functioning limitations as [FNP Leach-Minazzi] has no specialty in psychiatry." Docket Item 9 at 36.

[8] Dr. Santarpia opined that Carol could "follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits." Docket Item 9 at 606. She further concluded that although the evaluation "appear[ed] to be consistent with psychiatric problems," those problems were not "significant enough to interfere with the [Carol]'s ability to function on a daily basis." *Id.*

at 36.  In other words, the ALJ found that Dr. Santarpia's opinion was not restrictive enough.

As it stands, the Court is unable to determine why the ALJ apparently rejected the portion of LMSW Diebold's opinion most favorable to Carol.  *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (requiring an "'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that . . . 'a reviewing court . . . may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review'").  This Court has no idea whether the ALJ missed the absence-from-work conclusion, ignored it, or disagreed with it for some legitimate reason.[9]  And that is a second independent reason why remand is required.[10]

---

[9] If accepted and adopted, LMSW Diebold's opinion that Carol would be absent from work twice a month likely would have led to the conclusion that Carol was disabled.  More specifically, the vocational expert testified that the Department of Labor does not "report how many days an individual could take off prior to someone being terminated," but if someone were "absent *two or more times [a month] on a consistent basis*[,] . . . it would be difficult" for that person to be employed full-time.  Docket Item 9 at 75 (emphasis added).  So if she had credited LMSW Diebold's opinion, the ALJ may well have found Carol to be disabled.

[10] The Court "will not reach the remaining issues raised by [Carol] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

**CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Carol's motion for judgment on the pleadings, Docket Item 14, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:   April 27, 2021
         Buffalo, New York

　　　　　　　　　　　　　　　　　　　　_/s/ Lawrence J. Vilardo_
　　　　　　　　　　　　　　　　　　　　LAWRENCE J. VILARDO
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE